***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission, upon review of the evidence, reverses the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. An employment relationship existed between plaintiff and defendant-employer at the time of the injury.
2. Plaintiff was employed by defendant-employer on 19 March 1999, the date of plaintiff's injury by accident.
3. Freightliner Corporation is a duly qualified self-insured with Gallagher Bassett Services, Inc. acting as the third-party administrator.
4. On 19 March 1999, plaintiff suffered an injury by accident arising out of and in the course of her employment with defendant-employer.
5. The last day plaintiff worked for defendant-employer was 6 June 2000.
6. Plaintiff's average weekly wage is $598.06, yielding a compensation rate of $398.73.
7. The parties stipulated to three (3) exhibits:
a. Medical records for treatment of plaintiff's injuries.
b. Industrial Commission forms.
c. A chart showing employer-funded benefits received by plaintiff during times relevant to the claim
 ***********
Based upon all the evidence adduced from the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 52 years old. Plaintiff holds a secretarial associate's degree awarded in 1977. Before working for defendant-employer, plaintiff had many garment industry and textile jobs. She also worked two secretarial jobs.
2. Plaintiff began working for defendant-employer in March or May of 1998 and left on 6 June 2000. She worked as a painter. Her average weekly wage was $598.06, which yields a compensation rate of $398.73. Defendant-employer made freight trucks. When a truck was ready to be painted, plaintiff would drive the truck to her department, paint the chassis and the hub. After painting a truck, plaintiff would drive the truck from her department to another department.
3. On 19 March 1999, plaintiff drove a truck to another department. When she got out of the truck, she slipped on the fairing, a step outside of the truck cab. When plaintiff began to slip, she grabbed and held onto the steering wheel with her right hand supporting her body weight until she regained her footing. Plaintiff noticed bruising to her right leg and left arm. After her shift was over, plaintiff reported the incident to her group leader, who sent her to the nurse.
4. Plaintiff reported the incident to the nurse on duty and put cold compresses on her leg. Approximately one week after the incident, plaintiff began feeling pain. The pain progressed until it became bothersome to plaintiff. In addition, plaintiff began to feel pain in her shoulders and her left hand approximately two weeks after the incident. However, plaintiff continued to work.
5. Plaintiff sought treatment from her family physician, Dr. Cecil Farrington, on 28 June 1999 with complaints of pain in her right shoulder, left chest and left arm. She reported to Dr. Farrington that she had fallen approximately two months prior to her visit. Dr. Farrington referred plaintiff to Dr. Boyd Watts, an orthopedic surgeon, on 12 July 1999.
6. Plaintiff was written out of work by Dr. Farrington from 2 July 1999 to 12 July 1999.
7. Dr. Watts ordered an MRI, which indicated C4-5 disc space narrowing with a broad-based hard disc herniation with spondylotic bar causing moderate to severe central canal stenosis. Dr. Watts referred plaintiff to Dr. Kevin Zitnay, a neurosurgeon.
8. Dr. Zitnay first examined plaintiff on 9 September 1999. She was complaining of several months of progressive hand numbness in both hands and burning pain in the neck extending to the shoulders. Dr. Zitnay performed surgery on plaintiff on 21 September 1999 to fuse discs in her cervical spine. Dr. Zitnay released plaintiff to return to work on 16 November 1999 with no restrictions. Plaintiff returned to work on or about 1 December 1999. However, she still had pain in her shoulder.
9. Plaintiff returned to Dr. Zitnay for unrelated carpel tunnel surgery on her right wrist on 30 March 2000. Plaintiff's pain in her shoulder and arm did not abate. Thus Dr. Zitnay referred plaintiff to Dr. James L. Comadoll, an orthopedist.
10. Dr. Comadoll first saw plaintiff on 20 June 2000. Plaintiff complained of neck and shoulder pain. Dr. Comadoll requested an MRI on plaintiff's right shoulder and found tendinitis of her biceps tendon and cartilage tear of the shoulder. Dr. Comadoll performed surgery to repair the tear on 8 August 2000. Plaintiff continued to have pain in her right shoulder. Dr. Comadoll noted that plaintiff's major problem was an impingement in her rotator cuff. He believed it was a result of plaintiff's climbing in and out of trucks. Dr. Comadoll referred plaintiff back to Dr. Zitnay, who referred plaintiff to Dr. William Gary Shannon, a pain therapist.
11. Plaintiff first saw Dr. Shannon on 11 December 2000 for muscle damage in her right shoulder. She complained of neck pain, which radiated to her upper back and shoulders. Her pain was always worse on the right side. For the control of her pain, plaintiff was subjected to myofascial trigger point injections, regional nerve blocks, cervical epidurals and narcotics. However, plaintiff did not get much pain relief.
12. Plaintiff has other health issues. Plaintiff had surgery on her neck in 1991 to fuse her cervical spine as a result of an automobile accident. She underwent surgery on her sinuses on 28 July 1999. She broke her right leg in five places on 13 August 2000, four days after her rotator cuff surgery. She is a diabetic, has high cholesterol and high blood pressure. Plaintiff takes medication for a spasmodic bladder, depression, and a hiatal hernia. However, none of these conditions alone prevented plaintiff from working, except for the time during which her leg was in a cast. Dr. Comadoll testified that plaintiff was disabled due to a combination of her ailments. As of the hearing date, plaintiff continued to treat with Dr. Comadoll, who opined that plaintiff's symptoms of shoulder pain are casually related to her injury on 19 March 1999.
13. Dr. Shannon opined that plaintiff's shoulder and neck pain came primarily from the 19 March 1999 incident. He also stated that he believed she physically was not able to work as of 13 March 2001 due to her shoulder and neck pain. As of the hearing date, plaintiff continued to treat with Dr. Shannon.
14. Notes from Dr. Farrington from 2001 indicated that plaintiff was disabled due to diabetes, hyperlipidemia, depression, and osteoarthritis. Plaintiff continued to see Dr. Farrington, her family doctor, periodically. Dr. Farrington wrote plaintiff out of work beginning June 2000.
15. Dr. Zitnay noted that plaintiff was at maximum medical improvement as of 22 September 2002 from a neurosurgical standpoint and assigned a 15% permanent partial disability to plaintiff's neck.
16. Plaintiff sustained an injury by accident to her right arm, right shoulder and neck, which arose out of and in the course of her employment on 19 March 1999.
17. As a result of her 19 March 1999 injury by accident, plaintiff was unable to work from 13 July 1999 to 1 December 1999, and from 7 June 2000 and continuing.
18. Plaintiff is entitled to receive temporary total disability compensation in the amount of $398.73 per week from 13 July 1999 to 1 December 1999 and from 7 June 2000 and continuing until further order of the Commission.
19. Plaintiff is entitled to the payment of medical expenses incurred for the treatment of her injury by accident so long as the treatment is reasonably required to effect a cure, give relief, and/or lessen plaintiff's disability.
20. Defendants are entitled to a credit for amounts paid by plaintiff's short-term disability and extended sick pay plan.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 19 March 1999, plaintiff's average weekly wage was $598.06, yielding a compensation rate of $398.73. N.C. Gen. Stat. § 97-2(5).
2. The initial burden of proving disability is on the injured employee. Snead v. Carolina Pre-Cast Concrete, Inc., 129 N.C. App. 331,335, 499 S.E.2d 470, 473, cert. denied, 348 N.C. 501, 510 S.E.2d 656
(1998). To prove disability, an employee must demonstrate that she is unable to earn pre-injury wages in the same employment or in any other employment, and that the inability to earn such wages is due to the work-related injury. Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595,290 S.E.2d 682, 683 (1982). Here, plaintiff sustained an injury by accident to her right arm, right shoulder and neck, which arose out of her employment with defendant-employer as a direct result of a specific traumatic incident of the work assigned on or about 19 March 1999. N.C. Gen. Stat. § 97-2(6). Plaintiff is unable to earn pre-injury wages in the same employment or in any other employment.
3. As a direct result of the 19 March 1999 work-related injury, plaintiff was temporarily and totally disabled from work 13 July 1999 to 1 December 1999 and from 7 June 2000 and continuing. N.C. Gen. Stat. §97-29.
4. Plaintiff is entitled to temporary total disability compensation in the amount of $398.73 per week from 13 July 1999 through 1 December 1999 and from 7 June 2000 and continuing until further order of the Commission. N.C. Gen. Stat. § 97-29.
6. As the result of her 19 March 1999 injury by accident, plaintiff is entitled to have defendant-employer pay for all related medical expenses incurred or to be incurred in the future that are reasonably required to effect a cure or provide relief or lessen plaintiff's disability. N.C. Gen. Stat. §§ 97-25; 97-25.1.
7. Defendant-employer is entitled to a credit toward employer-funded short-term disability and extended sick pay plan benefits paid to plaintiff calculated from payments made by defendant-employer in each week during which compensation was due and payable, without any carry-forward or carry-back. N.C. Gen. Stat. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer shall pay to plaintiff temporary total disability compensation at the rate of $398.73 per week for the period of 13 July 1999 to 1 December 1999 and total disability compensation from 7 June 2000 and continuing until further order of the Commission. The compensation from 13 July 1999 to 1 December 1999 shall be paid to plaintiff in a lump sum.
2. A reasonable attorney fee in the amount of 25% of the compensation awarded to plaintiff is approved and allowed for plaintiff's counsel. The attorney fee shall be deducted from the accrued compensation due plaintiff and paid directly to plaintiff's attorney. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
3. Defendant-employer shall pay for all of plaintiff's medical expenses incurred or to be incurred in the future which are related to her compensable injury when bills have been submitted according to Commission procedure.
4. Defendant-employer shall pay the costs of this action.
This the ___ day of March 2004.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER